UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAWRENCE WRIGHT, on behalf of himself and all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>LEAFFILTER NORTH, LLC,<br><br>Defendants. | CIVIL ACTION NO. 3:25-CV-01080-KM<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Before the Court is Defendant LeafFilter North, LLC's ("LeafFilter") motion to transfer pursuant to 28 U.S.C. § 1404(a). (Doc. 12). LeafFilter requests that this matter be transferred to the United States District Court for the Northern District of Ohio. (Doc. 12, at 1). For the reasons provided herein, LeafFilter's motion to transfer (Doc. 12) is **GRANTED**.

**I.  BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from the complaint and, for the purposes of the instant motion, is taken as true. On May 18, 2023, Plaintiff Lawrence Wright ("Wright") registered his personal telephone on the National Do-Not-Call Registry. (Doc. 1, ¶ 23). That following July, Wright began receiving prerecorded calls and telemarketing text messages from LeafFilter, an Ohio corporation headquartered in Hudson, Ohio. (Doc. 1, ¶¶ 12, 24). On June 13, 2025, Wright commenced this putative class action pursuant to the Telephone Consumer Protection Act ("TCPA") (Doc. 1, ¶ 1). According to the complaint, the purpose of LeafFilter's communications was to market its gutter protection products. (Doc. 1, ¶ 16). Wright never provided LeafFilter with his telephone number or gave any consent to receive these calls or text messages. (Doc. 1, ¶¶ 77-78).

Wright brings two TCPA claims: (i) one claim alleging violation of the TCPA's prerecorded call provisions and (ii) one claim alleging violation of the TCPA's national do-not-call registry provisions. (Doc. 1, ¶¶ 109-121). Further, Wright seeks to pursue these claims on behalf of the following putative nationwide classes:

> **Prerecorded Call Class:** Plaintiff and all persons within the United States to whose cellular telephone number Defendant placed (or had placed on its behalf) a prerecorded or artificial voice call from four (4) years prior to the filing of the Complaint through the date of Certification.
>
> **National Do Not Call Class:** Plaintiff and all persons within the United States (1) to whose telephone number Defendant placed (or had placed on its behalf) two or more calls or text messages, (2) from four years prior to the filing of the Complaint to the date of certification, (3) for the purpose of encouraging the purchase of Defendant's products or services (4) in a 12-month period (5) when the telephone number to which the text messages were sent was on the National Do-Not-Call Registry at the time of the messages.
> (Doc. 1, ¶ 94).

On August 6, 2025, LeafFilter filed its answer to the complaint. (Doc. 7). On August 19, 2025, LeafFilter filed a motion to transfer the action to the Northern District of Ohio (Doc. 12). On August 20, 2025, LeafFilter filed its brief in support. (Doc. 14). On September 2, 2025, Wright filed his brief in opposition to the motion to transfer. (Doc. 16). On September 13, 2025, LeafFilter filed its reply brief. (Doc. 19). On September 25, 2025, both parties appeared before the Court for oral argument. This matter has been fully briefed and is now ripe for adjudication. (Doc. 19).

**II.    LEGAL STANDARD**

A court may transfer venue to any other district court where the civil action might have been brought if it serves the interests of justice and the convenience of the parties. 28 U.S.C. § 1404(a). "'The decision to transfer is in the court's discretion, but a transfer is not to be liberally granted.'". *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (quoting

*Handlos v. Litton Indus., Inc.*, 304 F. Supp. 347, 352 (E.D. Wis. 1969)). A court adjudicating a motion pursuant to 28 U.S.C. § 1404(a) must first determine whether the proposed venue is appropriate—that is, a district court can only transfer the action to a district or division "where [the case] might have been brought." 28 U.S.C. § 1404(a) ; *see also High River Ltd. P'ship v. Mylan Labs., Inc.*, 353 F. Supp. 2d 487, 491 (M.D. Pa. 2005). If venue is proper in the proposed district, courts consider the following non-exhaustive list of factors first outlined by the Third Circuit in *Jumara v. State Farm Insurance Company*:

> (1) the plaintiff's choice of forum; (2) the defendant's preference; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; (6) the location of books and records, similarly limited to the extent that the files could not be produced in the alternative forum; (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative court congestion in the competing courts; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; (12) and the familiarity of the trial judge with the applicable state law.

> *High River*, 353 F. Supp. 2d at 491 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995)).

The first six factors are considered the "private interest factors," while the last six factors are the "public interest factors." See *Petroleum Serv. Co. v. Santie's Wholesale Oil Co.*, No. 3:23CV1500, 2024 WL 816619, at *3-8 (M.D. Pa. Feb. 27, 2024). The moving party bears the burden of showing that these factors warrant transfer. *Jumara*, 55 F.3d at 879. However, the moving party "is not required to show 'truly compelling circumstances for ... change ... [of venue, but rather that] all relevant things considered, the case would be better off transferred to another district.' " *In re United States*, 273 F.3d 380, 388 (3d Cir. 2001) (quoting *In re Balsimo*, 68 F.3d 185, 187 (7th Cir. 1995)).

3

**III. DISCUSSION**

LeafFilter contends that this matter should be transferred to the Northern District of Ohio because venue is proper in the proposed district and the balance of the *Jumara* private and public interest factors weigh in favor of transfer. (Doc. 14, at 6, 12); *see* 55 F.3d at 879-80. Wright counters that LeafFilter has not met its "burden required to disturb Plaintiff's choice of venue[,]" and the proposed transfer shifts the inconvenience to Wright. (Doc. 16, at 1).

Under 28 U.S.C. § 1404(a), the Court must first determine "whether venue would be proper in the transferee district." *Weber v. Basic Comfort Inc.*, 155 F. Supp. 2d 283, 284 (E.D. Pa. 2001) (citing *Jumara*, 55 F. 3d at 879). If the first prong is satisfied, then the Court must consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F. 3d at 879.

    A. THIS ACTION MIGHT HAVE BEEN BROUGHT IN THE NORTHERN DISTRICT OF OHIO

LeafFilter contends that "venue is proper in the Northern District of Ohio where Defendant resides[,]" and that "[r]esidence includes any district 'defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]" (Doc. 14, at 6) Wright does not respond to this argument in its brief in opposition. (Doc. 16). If a plaintiff would have had a right to bring suit in the proposed transferee district at the commencement of the action, "independently of the wishes of [the] defendant," then the transferee district is a district where the action "might have been brought." *Hoffman v. Blaski,* 363 U.S. 335, 344 (1960). Under 28 U.S.C. § 1391(b)(1), "[a] civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." A business entity is "deemed to reside, if a defendant, in any judicial district in

4

which such a defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]" 28 U.S.C. § 1391(c)(2). Here, LeafFilter is incorporated and maintains its principal place of business in Hudson, Ohio, located in the Northern District of Ohio. (Doc. 14-1, ¶ 4). Thus, Ohio has general personal jurisdiction over LeafFilter, so venue is proper in the Northern District of Ohio. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m]… bases for general jurisdiction.'") (citations omitted).

### B. THE PRIVATE INTEREST *JUMARA* FACTORS

Having found that the action might have been brought in the Northern District of Ohio, the Court now considers the private interest factors as outlined in *Jumara*, 55 F. 3d at 879. The private interest factors are: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) convenience of the witnesses to the extent they would be unavailable in a particular forum; and (6) the location of evidence to the extent it cannot be produced in a particular forum. *Jumara*, 55 F. 3d at 879 (citations omitted). These factors relate to the "convenience of the parties and witnesses," as well as "'all other practical problems that make trial of a case easy, expeditious and inexpensive[.]'" *Petroleum Serv. Co.*, 2024 WL 816619, at *3 (quoting *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 n.7 (3d Cir. 2017)).

#### 1. Deference to Plaintiff's Choice of Forum

The first private interest factor relates to the plaintiff's choice of forum. *Petroleum Serv. Co.*, 2024 WL 816619, at *3. LeafFilter argues that because Wright brought this case as a putative nationwide class action, "the claim of any one plaintiff that a forum is appropriate

5

merely because it is his home forum is considerably weakened." (Doc. 14, at 7). Wright argues that his preference should receive "at least some weight" because it is his home forum and asserts that "there are certainly nationwide class members." (Doc. 16, at 7). However, in class actions, the plaintiff's choice is given less deference because the potential class members are scattered throughout the nation. *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) (holding that a plaintiff's choice of forum should receive less deference in class action suits since all members of the class could bring suit in his or her home forum); *see also Rauhala v. Greater New York Mut. Ins.*, No. CV 22-1788, 2022 WL 16553383, at *2 (E.D. Pa. Oct. 31, 2022) (finding that the usual deference to plaintiff's choice of forum should be given when there would be numerous possible plaintiffs, each potentially able to show that a particular forum is most suited for adjudicating the class's claim). Wright points out that LeafFilter "has not demonstrated that class members are evenly distributed throughout the country or focused in any one forum that would be more convenient than Pennsylvania." (Doc. 16, at 7). However, Wright fails to show that LeafFilter's telemarketing calls and messages targeted other Pennsylvania residents. Wright also does not allege that anything apart from his receipt of the calls occurred in this district. Because of the class action nature of this case, the first private interest factor favors transfer.

    2. **Defendants' Choice of Forum**

The second private interest factor relates to the defendant's choice of forum. *Jumara*, 55 F.3d at 879. This factor is redundant to the transfer analysis because LeafFilter's preference for the Northern District of Ohio is inherent in this motion. (Doc. 12); *see Etheridge v. World Mktg. of Am., Inc.*, No. 1:20-CV-00272, 2021 WL 1564336, at *4 (M.D. Pa. Apr. 21, 2021) ("'in reality [the second factor] does little more than frame the issue, because there would be

no motion to transfer unless the defendant prefers a different forum.'") (quoting *Edwards v. Equifax Info. Servs., LLC*, 313 F. Supp. 3d 618, 622 (E.D. Pa. 2018)). The second private factor is neutral. *See Jumara*, 55 F.3d at 879.

### 3. Where the Claims Arose

The third factor examines where the claim arose. *See Jumara*, 55 F.3d at 879. LeafFilter argues that this factor should "carry little, if any, weight" because Wright brought this case as a nationwide class action. (Doc. 14, at 11-12). Wright counters this argument and asserts that this factor weighs against transfer because "[w]hile the acts may have emanated from Ohio, they ended in this District causing harm to [Wright] and other class members located here." (Doc. 16, at 8). As previously mentioned, there is no showing that the purported class members reside in Pennsylvania. As a Pennsylvania resident, Wright received the unwanted calls in this district. (Doc. 1, ¶¶ 10, 16) However, he alleges nothing to suggest that a significant number of the nationwide class also received these calls in Pennsylvania. In its brief in support, LeafFilter provided a signed declaration from an executive officer stating that "[a]ll decisions regarding who to call, when to call and the content of the call are made in Hudson." (Doc. 14-1, ¶ 12). Since the alleged injuries of the purported class members could be dispersed throughout various states, and the decisions that led to the telemarketing communications were made in Ohio, this factor weighs in favor of transfer. *See Shelton*, 2025 WL 693249, at *3 (finding that *Jumara*'s third private factor supported transfer in a TCPA class action because the "policies in question were formulated and implemented in California"); *see also Geraci v. Red Robin Int'l, Inc.*, No. 1:18-CV-15542-RMB, 2019 WL 2574976, at *6 (D.N.J. June 24, 2019) (deciding that the third private factor weighed in favor

7

of transfer because the decision to implement the telemarketing program and the means by which the automated messages defendant sent originated in the proposed district).

### 4. Convenience of the Parties

The fourth private interest factor evaluates the "convenience of the parties as indicated by their relative physical and financial condition." *Jumara*, 55 F.3d at 879. LeafFilter argues that the Northern District of Ohio is more convenient for a "Hudson, Ohio-based company concerning actions and conduct taking place predominantly within Hudson, Ohio[.]" (Doc. 14, at 8). Wright avers that "[t]ransfer is clearly not warranted here because the effect would be to shift inconvenience from [LeafFilter] to [Wright]." (Doc. 16, at 9). Wright further suggests that LeafFilter's financial condition, in comparison to Wright's, allows the company to afford the inconvenience and cost of travel more easily. (Doc. 16, at 9). While this is true, Wright is one of hundreds of purported plaintiffs, and the inconvenience to him from litigating this case in Ohio would be slight in comparison. *See Geraci*, 2019 WL 2574976, at *6 ("As representative of a putative class action, Plaintiff will likely play only a minimal role in litigation, if any at all. On the other hand, Defendant will likely spend significant resources defending this suit."); *see also Rauhala*, 2022 WL 16553383, at *4 (noting that although corporate defendant had more resources than 82-year-old retired plaintiff, plaintiff would have a "minimal role in the litigation" and would experience "little or no inconvenience if the case [was] transferred to New York."). At oral argument, Wright did not assert that he could not travel to Ohio. This factor supports transfer.

### 5. Convenience of the Witnesses

The fifth private interest factor considers the convenience of any potential witnesses. *Jumara*, 55 F.3d at 879. This factor is considered "only to the extent that the witnesses may

actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. At oral argument, both parties agree that the convenience of the witnesses carries the heaviest weight among the private factors. Wright argues that the fifth factor does not weigh in favor of transfer because LeafFilter "has not met its burden to show that any witness would be unavailable in this District." (Doc. 16, at 9). LeafFilter states that the staff members who "create and oversee the consumer outreach" predominantly reside in the Hudson, Ohio area." (Doc. 14-1, ¶ 3). The signed declaration identifies key employees and information involved in the underlying telemarketing program. (Doc. 14-1, ¶¶ 14, 18). These witnesses likely possess critical knowledge regarding the fundamental issues in this case. (Doc. 19, at 9). At oral argument, LeafFilter asserted that Wright will sit for his deposition in this district, regardless of where the case proceeds, thereby reducing Wright's inconvenience. Furthermore, Wright's counsel must travel to the Northern District of Ohio for the depositions of LeafFilter's relevant witnesses. *See, e.g., Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 941 F. Supp. 2d 513, 519 (D.N.J. 2005) ("[T]here is a general presumption that the 'deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business.'") (citation omitted) Because most of the identified witnesses in this case, which LeafFilter's declaration provided, reside in the Northern District of Ohio, this factor weighs in favor of transfer. *See Shelton*, 2025 WL 693249, *3 (acknowledging that the fifth private factor favored transfer because "the record suggest[ed] many key witnesses [were] located in the Central District of California"); *see also Rauhala*, 2022 WL 16553383, at *4 (finding that the fifth private favored venue transfer because the material witnesses likely knowing relevant information were located in the transferee district).

### 6. Location of books and records

The sixth private interest factor relates to the location of books or records. *Jumara*, 55 F.3d at 879. LeafFilter asserts that "all documents in LeafFilter's possession relating to (i) consent obtained from and inquiries made by putative class members through LeafFilter websites and (ii) lead information relating to putative class member inquiries made through third party sites are managed and accessed from Hudson." (Doc. 14, at 11). Wright argues that this factor "does not move the needle" because LeafFilter "does not suggest that any documents cannot easily be produced electronically in this district." (Doc. 16, at 10). The Court agrees with this argument. Courts have given this factor less weight in the age of modern technology, where records can be produced or transmitted electronically. *See Regmund v. Talisman Energy USA, Inc.*, No. CV 16-711, 2016 WL 5794227, at *5 (W.D. Pa. Aug. 31, 2016), *report and recommendation adopted*, No. 2:16CV711, 2016 WL 5720841 (W.D. Pa. Sept. 30, 2016) ("[m]odern technological advances have rendered this factor less significant than it was previously."). At oral argument, LeafFilter did not present any additional evidence that would have moved the needle. Therefore, the sixth public interest factor is neutral. *See Petroleum Serv. Co.*, 2024 WL 816619, at *6 ("the parties have not identified any documents that cannot be easily reproduced and provided in electronic format. This factor is thus neutral.").

### C. THE PUBLIC INTEREST *JUMARA* FACTORS

The Court next turns to the six public interest factors. *See Jumara*, 55 F.3d at 879-80. The public interest factors are: (1) the enforceability of the judgment; (2) practical considerations that could make trial easy, expeditious or inexpensive; (3) the congestion of the courts' dockets; (4) the local forum's interest in deciding the case; (5) the public policies

of the fora; and (6) the trial judge's familiarity with any state law. *Jumara*, 55 F.3d at 879-80 (ciations omitted). These factors ask the Court to consider "'where litigation can proceed in the most efficient and inexpensive fashion.'" *Petroleum Serv. Co.*, 2024 WL 816619, at *6 (quoting *In re Amkor Tech., Inc. Sec. Litig.*, No. CIV.A. 06-298, 2006 WL 3857488, at *6 (E.D. Pa. Dec. 28, 2006)).

### 1. Enforceability of a Judgment

The first public interest factor focuses on the enforceability of the judgement. *Jumara*, 55 F.3d at 879. Neither party contests that either forum would have equal ability to enforce its judgment. (Doc. 14, at 15; Doc. 16, at 10). The Court agrees that this factor is neutral. *See Etheridge*, 2021 WL 1564336, at *6 (stating "[n]either party has presented an argument regarding the enforceability of a judgment in either forum. The court is not aware of any reason why this factor presents a concern, and accordingly this factor is not relevant.").

### 2. Practical Considerations that Could Make Trial Easier, Quicker, or Less Expensive

The second public interest factor examines practical considerations affecting any potential trial's ease, efficiency, or expense. *See Jumara*, 55 F.3d at 879. LeafFilter argues that because "this [a]ction is in the earliest stages, there will be no waste of judicial resources to transfer the case at this early stage." (Doc. 14, at 14). Wright argues that this factor is neutral and because most of the relevant documents are in electronic form, their transportation to either forum should be inexpensive and straightforward. (Doc. 16, at 11). The Court agrees with LeafFilter that this factor favors transfer because this case is still in the early stages, and a "transfer will not significantly disrupt the litigation or result in a waste of judicial resources." *Smith v. HireRight Sols.*, No. CV. 09-6007, 2010 WL 2270541, at *9 (E.D. Pa. June 7, 2010) (finding that the second public factor weighs in favor of transferring case to Oklahoma in the

11

earlier stages of litigation) (quoting *Zokaites v. Land-Cellular Corp.*, 424 F. Supp. 2d 824, 841 (W.D. Pa. 2006)).

### 3. Court Congestion

The third public interest factor weighs administrative difficulties related to court congestion in either forum. *See Jumara*, 55 F.3d at 879. LeafFilter argues that the Northern District of Ohio is slightly less congested than the Middle District of Pennsylvania. (Doc. 14, at 14). Wright asserts that this factor is neutral because LeafFilter only shows a slight difference in congestion between the two forums. (Doc. 16, at 12). While analyzing this factor, courts usually refer to statistics from the Administrative Office of the United States Courts. *See, e.g., Tshudy v. Pennsylvania State Univ.*, No. CV 22-3336, 2022 WL 4225612, at *4 (E.D. Pa. Sept. 13, 2022). As of December 31, 2024, the Middle District of Pennsylvania has (i) 392 civil actions per judgeship, (ii) 451 weighted actions per judgeship, (iii) 602 pending actions per judgeship, and (iv) a median time to disposition of 8.1 months; meanwhile, the Northern District of Ohio has (i) 285 civil actions per judgeship, (ii) 327 weighted actions per judgeship, (iii) 624 pending actions per judgeship, and (iv) a median time to disposition of 8.1 months. United States District Courts, *National Judicial Caseload Profile*, https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.pdf. The Court agrees with Wright that this factor is neutral because the differences in congestion between the two districts is minimal. *See Shelton*, 2025 WL 693249, at *4 (finding that the third public interest factor was neutral partially because both districts had nearly identical median times from filing to trial). Here, the data does not balance the scale one side more than the other. The third public factor is neutral.

4. **Local Interest**

The fourth public interest factor weighs the local interest each forum has in resolving the controversy. *See Jumara*, 55 F.3d at 880. LeafFilter avers that the fourth public factor favors the location of the defendant in putative nationwide class actions, explaining why the Northern District of Ohio has a stronger local interest. (Doc. 14, at 13). Wright counters that the fourth factor is "regularly rendered neutral in class actions… because the national nature of the class action does not make this a local controversy." (Doc. 16, at 12). The Court acknowledges Wright's argument that "each Court has a legitimate interest in overseeing the case[.]" *See Cigna Corp. v. Celgene Corp.*, No. CV 21-90-KSM, 2021 WL 2072210, at *4 (E.D. Pa. May 24, 2021) ("As the claims allege nationwide violations of federal law there are no distinct public interests in resolving the claims in Pennsylvania, no clear difference in policy references for the two locales, and no disparities in the qualifications of the federal judges sitting in the two districts to pass on federal law."). However, in the context of nationwide class action lawsuits, the district where a class action defendant is located generally has a greater interest in the litigation. *See, e.g., Geraci*, 2019 WL 2574976, at *4 ( transferring case from New Jersey to Colorado because the defendant company was "headquartered in Colorado and allegedly harm[ed] citizens throughout the nation by using technology in Colorado to effect marketing decisions made in Colorado"); *Shelton*, 2025 WL 693249, at *4 (finding in a TCPA putative class action that because the corporate defendant was located in the Central District of California, that forum has a greater local interest in deciding the case). The Court agrees that since LeafFilter is based in Hudson, Ohio, the Northern District of Ohio has a greater interest in adjudicating these putative class claims under federal law. *See Petroleum Serv. Co.*, 2024 WL 816619, at *7 ("a party's status as a state corporate entity gives

13

a district in that state 'at least some interest in adjudicating that dispute.'") (quoting *Deloitte Consulting LLP v. Sagitec Sols. LLC*, 692 F. Supp. 3d 421, 438 (D. Del. 2023)). The fourth factor weighs slightly in favor of transfer.

### 5. Public Policies of the Fora

The fifth public interest factor considers the public policies, if any, the forum has in place in relation to the pending issue. *Jumara*, 55 F.3d at 880. Wright contends that the fifth factor, the public polices of the fora, is neutral, and LeafFilter does not analyze the fifth public interest factor in its brief in support. (Doc. 16, at 10; Doc. 14, at 12). At oral argument, neither party presented arguments suggesting that the Middle District of Pennsylvania and the Northern District of Ohio differ in their policies regarding the scope and application of TCPA. *Tshudy*, 2022 WL 4225612, at *4 (finding that the fifth public interest factor was neutral because neither party addressed the public policies of the Eastern District of Pennsylvania and the Middle District of Pennsylvania). District courts in the Third Circuit have found the fifth public interest factor neutral when the cause of action at issue arises under federal law. *Scanlan v. Am. Airlines Grp., Inc.*, 366 F. Supp. 3d 673, 679 (E.D. Pa. 2019) (citations omitted). Thus, the Court finds that the fifth factor is neutral.

### 6. Trial Judge's Ability to Apply State Law

The sixth factor considers the trial judge's familiarity with the applicable state law in the transferee forum. *See Jumara*, 55 F.3d at 879-80. LeafFilter and Wright both agree that this factor is neutral. (Doc. 14, at 15; Doc. 16, at 10). It is well settled that federal courts regularly apply the laws of states other than where they sit and do so competently. *Etheridge*, 2021 WL 1564336, at *7 (finding the applicable state law factor neutral because "'federal judges routinely apply the law of a State other than the State in which they sit'" and "the

14

district court in either forum is more than capable of applying another state's law.") (quoting *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 67 (2013)) (citing *McCraw v. GlaxoSmithKline*, No. CIV.A. 12-2119, 2014 WL 211343, at *7 (E.D. Pa. Jan. 17, 2014)) (internal quotation marks omitted). Therefore, the Court finds that this factor is neutral.

Having considered all *Jumara* private and public interest factors, the weight of the factors favors transfer. Accordingly, Defendants' motion to transfer venue pursuant to Section 1404(a) will be **GRANTED**. (Doc. 12).

IV. <u>CONCLUSION</u>

Based on the foregoing, Defendants' motion to transfer is **GRANTED**. (Doc. 12). An appropriate Order follows. The Clerk of Court is directed to close this case in this district.

**Dated: October 31, 2025**

                                                              **BY THE COURT:**

                                                              *s/ Karoline Mehalchick*
                                                              **KAROLINE MEHALCHICK**
                                                              **United States District Judge**